**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

NATRICE CLARK,

        Plaintiff,

v.                                    Case No.: 3:25-cv-334-WWB-PDB

CIRCLE K STORES INC.,

        Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Final Summary Judgment (Doc. 22), Plaintiff's Response in Opposition (Doc. 23), and Defendant's Reply (Doc. 24).[1]  For the reasons set forth below, the Motion will be denied.

## I.    BACKGROUND

Plaintiff Natrice Clark visited one of Defendant Circle K Stores, Inc.'s stores in June 2024 to purchase ice and chips.  (Doc. 22-1 at 19:18–23, 20:12–25).  Not long before she arrived, an employee ("**Employee**") placed two yellow cones toward the center of the store's deepest aisle.  (Doc. 22-1 at 26:22–27:20, 28:3–8; Doc. 25 at 5:50:00–24).[2]  Immediately, a customer picked up one of the cones and moved it farther away from the checkout registers, placing it at the far end of the aisle.  (Doc. 22-1 at 28:12–29:13; Doc.

---

[1] All filings fail to comply with this Court's January 13, 2021 Standing Order.  In the interests of justice, the Court will consider the filings because this matter is fully briefed and ripe for resolution on the merits, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

[2] Pincites to the store's surveillance footage reflect the purported time of day as reflected in the upper left-hand corner of the recording.

25 at 5:50:24–57).  Seventeen minutes later, Plaintiff entered the store, walked to the last aisle, and filled two cups with ice.  (Doc. 22-1 at 20:15–22, 30:1–11; Doc. 25 at 6:07:30–08:41).  While Plaintiff filled the cups, Employee grabbed a mop and mopped the area of the floor where he had previously placed the two cones, though now only one cone remained.  (Doc. 22-1 at 31:24–32:23; Doc. 25 at 6:08:08–53).  Plaintiff finished filling her cups with ice and walked away from the checkout counter, through the last aisle, and toward the far end of the store.  (Doc. 22-1 at 33:8–18; Doc. 25 at 6:08:53–09:02).  In doing so, she walked past both yellow cones.  (Doc. 22-1 at 33:20–22, 36:17–22, 38:2–9; Doc. 25 at 6:08:56–09:05).  Plaintiff does not dispute that the yellow cones were out in the open and within her field of vision.  (Doc. 22-1 at 33:22–34:5, 36:19–37:6, 38:7–12).  And she admits that the cones were placed consistent with a precautionary warning that something was on the floor.  (*Id.* at 37:9–22, 41:24–42:3).  However, Plaintiff does not know whether she saw the cones and initially testified that she did not recall seeing any signs specifically warning of wet floors.  (*Id.* at 24:8–13, 34:6–8, 36:19–37:2).

After reaching the far end of the last aisle, Plaintiff began to round the corner and then slipped, fell, broke her arm, and sustained various other injuries.  (Doc. 22-1 at 15:6–18:24, 20:21–21:2, 38:13–39:3, 43:3–11, 62:6–15, 98:7–10; Doc. 25 at 6:09:01–08).  Initially, Plaintiff did not see what had caused her to slip.  (Doc. 22-1 at 21:3–9, 23:16–19).  But she claims that, after falling and calling out for help, Employee told her that a women had previously informed him that she threw up on the floor.  (*Id.* at 22:13–15, 23:4–7).  Employee also tried to help Plaintiff up, but it was another customer that succeeded in doing so.  (*Id.* at 43:22–45:8; *see also* Doc. 25 at 6:10:36–12:17).  The customer confirmed that Plaintiff had slipped on and fell in a pile of vomit.  (Doc. 22-1 at

2

23:17–19, 44:24–45:1, 45:9–14).  Shortly thereafter, Plaintiff walked toward the front of the store, spoke briefly to Employee, and left.  (*Id.* at 46:17–48:11; Doc. 25 at 6:12:53–13:22).  She then drove to the emergency room for treatment and eventually sought additional care from other providers.  (Doc. 22-1 at 53:12–13, 56:17–18, 87:16–93:16).  After speaking with Plaintiff, Employee moved both cones to the back of the aisle, where Plaintiff had fallen.  (*Id.* at 48:12–49:3; Doc. 25 at 6:13:28–57).  Several minutes later, he returned to that area with a mop.  (Doc. 22-1 at 50:8–51:5; Doc. 25 at 6:16:52–17:29).

As a result of her accident, Plaintiff seeks damages against Defendant for negligence.  (*See generally* Doc. 3).

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it may "affect the outcome of the suit under the governing law."  *Id.*  "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007).  Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own

3

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III.   DISCUSSION

Under Florida law, "[t]o sustain a premises liability action based on a landowner's negligence, a plaintiff must prove the standard elements of a negligence claim: duty, breach of duty, proximate causation, and damages—with the added element that the landowner had possession or control of the premises when the alleged injury occurred." *Conner v. Marriott Hotel Servs., Inc.*, 559 F. Supp. 3d 1305, 1308 (M.D. Fla. 2021). Additionally, "a plaintiff bringing a negligence claim based upon a transitory foreign substance on the floor of a business must prove that the business had 'actual or constructive knowledge of the dangerous condition and should have taken action to remedy it.'" *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1010 (11th Cir. 2019) (quoting Flat. Stat. § 768.0755(1)).[3] "[A]ctual knowledge of a dangerous condition exists

---

[3] Although there is minimal support for the proposition that section 768.0755 did not introduce a new and separate element that a plaintiff must prove in a slip and fall case, *see Kenz v. Miami-Dade Cnty.*, 116 So. 3d 461, 464 (Fla. 3d DCA 2013), the majority of courts have referred to breach and knowledge as separate elements of a transitory foreign substance claim brought under Florida law. *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1169 (11th Cir. 2023) (enumerating the standard elements of a negligence claim and referring to the knowledge requirement of section 768.0755 as an "[a]dditional[]" element of proof); *Rivera v. Wal-Mart Stores E., LP*, No. 3:10-cv-956-J, 2011 WL 7575393, at *2 (M.D. Fla. Jan. 13, 2011) ("Moreover, as previously determined

when the [business's] employees or one of its agents knows of or creates the dangerous condition." *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001). Constructive knowledge of a dangerous condition is established through circumstantial evidence showing that (1) "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition"; or (2) "[t]he condition occurred with regularity and was therefore foreseeable." Fla. Stat. § 768.0755(1)(a)–(b).

Defendant briefly argues that it had no duty to warn Plaintiff of the alleged vomit because it was an open and obvious danger of which Defendant lacked superior knowledge. *See Hunt v. Slippery Dip of Jack., Inc.*, 453 So. 2d 139, 139 (Fla. 1st DCA 1984) ("[A] defendant's knowledge of a danger must be superior to that of a business invitee in order to create a duty on the part of the defendant to warn."). Florida courts "have repeatedly held that [while] the 'open and obvious danger doctrine' can absolve a property owner on a failure to warn theory, [] it does not absolve a property owner's duty to protect invitees from reasonably foreseeable risks, even if the invitees are aware of [the] dangerous conditions." *Collias ex rel. Collias v. Gateway Acad. of Walton Cnty., Inc.*, 313 So. 3d 163, 166 (Fla. 1st DCA 2021); *see also id.* at 167 ("It is only when the risk of harm is so 'open and obvious' that 'no reasonable person would injure himself' under the circumstances that the duty to warn and the duty to make premises safe are simultaneously met." (quoting *Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1136

---

in two prior cases within this District, section 768.0755 enacts a substantive change in the law by adding a new element to the claim."); *Glaze v. Worley*, 157 So. 3d 552, 555–56 (Fla. 1st DCA 2015); *Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418, 426 (Fla. 4th DCA 2014). The Court therefore evaluates breach and knowledge as separate elements of Plaintiff's claim.

(Fla. 1st DCA 2017))).  Here, Plaintiff alleges that Defendant owed her a duty to maintain a safe premises, which it breached, so notwithstanding Defendant's arguments on its duty to warn, triable issues remain.  Even if Plaintiff had proceeded solely on a duty-to-warn theory, Defendant argues that it lacked superior knowledge of the alleged condition merely because it lacked actual and constructive knowledge of the condition.  By doing so, Defendant merges its argument on the element of duty into an argument against actual or constructive knowledge.  The utility of that merger is questionable, as one struggles to comprehend a condition whose dangerous character remains hidden from a business's employees despite being open and obvious to its invitees.

Defendant next argues that no evidence establishes its actual knowledge of the vomit on which Plaintiff slipped and fell.  *Cf. Celotex*, 477 U.S. at 325 (stating that a movant may discharge its initial burden on summary judgment by establishing "that there is an absence of evidence to support the nonmoving party's case").  In arguing that "no record evidence" establishes its actual knowledge of a dangerous condition, Defendant supplied the following excerpt from Plaintiff's deposition testimony:

> Q: Do you[, Plaintiff,] have any knowledge of Circle K or an employee knowing that the substance was on the floor?
>
> A: No.

(Doc. 22 at 2 (selectively quoting Doc. 22-1 at 22:2-5)).  Plaintiff, however, does assert that Defendant had actual notice of the dangerous condition.  This discrepancy is easily resolved in Plaintiff's favor by examining the relevant testimony:

> Q: Do you[, Plaintiff,] have any knowledge of Circle K or an employee knowing that the substance was on the floor?
>
> A: No.  **But can you repeat that?  I'm sorry.  Can you repeat that again?**

> Q: Sure. Do you have any knowledge of Circle K or an employee of Circle K knowing that or having knowledge of the substance being on the floor?
>
> A: Okay. During -- you mean during this incident?
>
> Q: For this particular incident, yes.
>
> A: Okay. After I fell on the floor, I was calling out for help, and **[Employee] said, "I'm coming, I'm coming. A lady told me she threw up on the floor."**

(Doc. 22-1 at 22:2–15 (emphasis added)). The fuller picture of Plaintiff's transcript thus suggests that Defendant omitted relevant portions of Plaintiff's testimony in an apparent effort to bolster its *Celotex*-style argument for summary judgment.[4] Likewise, Defendant fails to specifically acknowledge Employee's alleged statement of actual knowledge. Defendant does, in its Reply, cite to additional testimony in which Plaintiff stated that *before* she fell, nothing suggested to her that Defendant had actual knowledge of the dangerous condition. (*See* Doc. 22-1 at 52:3–8). But such is entirely consistent with Plaintiff's testimony claiming that Employee's statement came *after* her fall. Accordingly, no record evidence contests Plaintiff's version of events.[5]

---

[4] Put differently, it appears Defendant intentionally and materially misrepresented a factual contention that it had certified as having evidentiary support. *See* Fed. R. Civ. P. 11(b)(3). The countervailing inference is weak. It strains credulity to imagine that Defendant's omission of relevant testimony was unintentional considering that some of the relevant, omitted testimony was located on the same transcript line as the partial response Defendant chose to include in its quotation.

[5] Other portions of Plaintiff's testimony appear to be inconsistent with her recollection of Employee's statement about the vomit. (*See* Doc. 22-1 at 51:17–52:2). However, Plaintiff later clarified that these answers were given in response to questions about the store's security footage, which was played at her deposition, and were intended to describe the video's depiction of events. (*Id.* at 109:21–110:8). She then reiterated that, after her fall, Employee told her that someone had previously vomited on the floor. (*Id.* at 110:18–21). Therefore, Plaintiff's testimony on Employee's statement is neither "blatantly inconsistent" nor "blatantly contradicted by the record," and the Court accepts it as true. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013).

*Celotex* is "commonly misunderstood and misapplied" in cases that present "a 'triable, factual dispute." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 607 (11th Cir. 1991) (quoting *Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181, 188 (D.C. Cir. 1985) (Bork, J., dissenting to judgment later reversed in *Celotex*)).   The instant case is one such example.   Because "the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was overlooked or ignored by the moving party," Defendant "has thus failed to meet the initial burden of showing an absence of evidence," and its *Celotex*-style argument fails. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (quotation omitted).[6]  Therefore, there remains a triable issue as to whether Defendant had actual knowledge of the dangerous condition Plaintiff alleges. *See Barbour*, 801 So. 2d at 957.

As to constructive knowledge, Defendant argues that Plaintiff "cannot prove as a matter of law that the alleged dangerous condition existed for a sufficient amount of time to place Defendant on constructive notice."   (Doc. 22 at 8).   However, the summary judgment standard does not demand that Plaintiff "prove anything." *Ismael v. Roundtree*, 161 F.4th 752, 763 (11th Cir. 2025) (quotation marks omitted).   Rather, it requires only

---

[6] The Court acknowledges that Plaintiff's argument on Employee's statement of actual knowledge is limited to the Statement of the Facts and Conclusion sections of her Response.   (*See generally* Doc. 23).   The Court, however, is still obligated to consider "all of the evidence before it" at summary judgment. *Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986).   All the evidence includes page twenty-two of Plaintiff's deposition transcript and, in this instance, the sophism with which Defendant quoted that portion of the record was on plain display without a fully developed counterargument from Plaintiff.   Assuming, then, that Plaintiff forfeited the argument, Defendant still "fail[ed] to discharge [its] initial burden, [so its] motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *see also Clark*, 929 F.2d at 607 ("[T]he party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly carried its burden." (quotation omitted)).

that Plaintiff "show[] that there is a genuine issue for trial" after Defendant has satisfied its initial burden. *Celotex*, 477 U.S. at 324 (quotation omitted). Moreover, Defendant argues that Plaintiff's theory of constructive knowledge is the result of impermissible inference stacking. But federal courts sitting in diversity apply Federal Rule of Civil Procedure 56 and "do not apply state-law rules against . . . 'stacking' inferences." *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) (quotation omitted). Under the federal standard, "an inference must be 'reasonable' to defeat a motion for summary judgment." *Id.* (quoting *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982)).

Plaintiff's theory of constructive knowledge appears to rely solely on Employee's placement of two cones in the center of the last aisle of the store. Staging those cones would normally be indicative of Defendant's actual knowledge. *E.g.*, *Burgess v. Sam's E., Inc.*, No. 2:22-cv-14074, 2023 WL 3600605, at *4 (S.D. Fla. Apr. 7, 2023). Here, however, an inference remains that Employee unknowingly placed the cones next to only one of two piles of vomit, prompting a customer to immediately move one of the cones to better warn customers of the second pile at the far end of the aisle. This inference is by no means exclusive among other possibilities, but it reasonably explains the actions of the customer. It also suggests that the vomit on which Plaintiff slipped had been on the floor for at least nineteen minutes, and reasonably explains why, as Plaintiff notes, no customers appear to have walked through the far end of the aisle during that period. (*See* Doc. 25 at 5:50:00–6:09:00). "Florida's courts have found at least fifteen to twenty minutes to be sufficient for defendants to be charged with knowledge of the condition and a reasonable time in which to correct it." *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166,

1169 (11th Cir. 2023) (quotation omitted). Moreover, the location of Plaintiff's fall was adjacent to, and apparently just feet away from, the location where Employee had previously mopped. "[W]hen an employee is in the area, a jury can reasonably infer—at least where the condition is visible—that those employees should have noticed the condition." *Tejeda v. Costco Wholesale Corp.*, No. 20-24790-CIV, 2022 WL 1478884, at *3 (S.D. Fla. Jan. 26, 2022). That "inference is not [made] unreasonable simply because it is based in part on conjecture, for an[y] inference by definition is at least partially conjectural." *Daniels*, 692 F.2d at 1326; *cf. id.* at 1324 ("[A]n inference is not reasonable if it is . . . not based on the evidence but is pure conjecture and speculation."). Therefore, while Plaintiff's theory of constructive notice is underdeveloped, it is nonetheless supported by testimonial and video evidence and is not solely a product of conjecture. A reasonable jury could thus conclude that Defendant should have discovered the alleged condition in its exercise of reasonable care, and a triable issue remains as to whether Defendant had constructive knowledge of the dangerous condition Plaintiff alleges.

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** that Defendant's Motion for Final Summary Judgment (Doc. 22) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida on April 6, 2026.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record